166226 and 166227 Elizabeth Osborn and others v. John M. Griffin, estate of Dennis B. Griffin and others. Arguments not to exceed 15 minutes per side. Mr. Gary for the appellants. Thank you your honors and may it please the court my name is Gregory Gar and I'm here on behalf of all the defendants in this litigation and with the court's permission I'd like to reserve three minutes of my time for the proper disposition of assets administered by their parents estates and their father's trust decades ago. After resolving every last contested fact issue itself the district court entered a 584 million dollar judgment against defendants essentially giving plaintiffs everything they asked for including damages in the amount of distributions that their own children had received and retained. We believe that judgment is legally flawed in a number of respects. Before you hear this morning I'd like to focus on three aspects in which the district court erred. Number one as a threshold matter most or all of the plaintiffs claims are barred by the probate exception to federal jurisdiction and the Kentucky statute of limitations. Number two even accepting all of the district court's liability findings the district court's 584 million dollar judgment is grossly excessive and legally flawed and number three at a bare minimum defendants were entitled to present their defense and their arguments to a jury because as the plaintiffs explicitly stated below and as the judgment makes clear plaintiffs sought and received the paradigm of legal relief money damages. Now beginning with the probate exception this court's decision in Wise Carver versus Moore makes clear that where claims focus on property that was disposed of as part of a probated estate they are off limits for purposes of federal court jurisdiction and here I'd like to point you to a couple of documents in the record that make clear that with respect to the stock and property that flow properties were absolutely disposed of as part of the estates in the Kentucky courts. First I would point you to the 1987 interim settlement of Rose Ellen Griffin's estate that's document 430-39 at page 19951 and second I'd point you to the 1998 settlement for John L. Griffin's estate and that's record document 762-07 page 19 and what those documents will show you for example taking the 1987 settlement they'll show you that the specific assets at issue here for 1987 the sale of the Griffin Industries stock from Rose Ellen Griffin's estate were squarely before the probate court. Those assets were part of the race in the estate. The sales were approved by the probate court. In fact the document I gave you will specifically list these sales. The proceeds of those sales went into the estate. The estate was dispersed. It was approved by the Kentucky courts and for that reason we think the claims challenging the stock that went through the estates and the real property that went through John L. Griffin's estate. In the probate process before the probate court concerning this was there a was there a lawsuit there as well? Betsy Osborne did seek to file these claims before the probate court and there are certainly procedures by which claims and objections can be made. Now the central objection that the plaintiffs make before this court is that we're not seeking the race, the assets themselves, we're seeking damages for the assets. And this court's decision in Weiscarver v. Moore squarely resolves that argument. In fact Weiscarver is exactly on all fours with this case. It involved an estate that was probated in Kentucky. It involved a dispute among family members claiming that the executors of the estate essentially duped an older man into redisposing his assets. The plaintiffs came to court seeking claims for breach of fiduciary duty and damages and this court said you can't do that under the probate exception because allowing plaintiffs to recover damages in the amount of the assets that were probated in Kentucky courts would be tantamount to setting aside the estate. I mean that that's what the court said on pages 750 to 751 and also note one of its decision. It's squarely on point. Now there were some claims in Weiscarver that dealt with inter vivos transfers, transfers made during the decedent's life and the court said that those claims were not within the probate exception. But with respect to the claims that targeted assets that had already been probated by the Kentucky courts, this court held that they were within the probate exception and the fact that they were seeking. You say all the assets that are present in this case were disposed of through the probate? No your honor. You're saying some were and some were not. That's right and so that the assets that were subject to probate were the sale of the Griffin industry stock from Rose Ellen's estate in 1985 to 87. The sale of the Craig protein stock from John L. Griffin's estate in 1997 and the two real properties that were sold from that estate. Now there's a separate claim with respect to Griffin industry stock that was sold from John L. Griffin's trust and the argument with respect to that property is different but it also falls within the probate exception and the reason why it falls within the probate exception is because one of the things this court made clear in Weiscarver as well is that the federal courts cannot hear challenges to the validity of a person's will. The federal transfers from John L. Griffin's trust, that's exactly what plaintiffs had to ask the district court to do and what the district court in fact did and if you look at page six of our reply brief we put the we give you the sites to where plaintiffs asked them to invalidate it and the district court did and I think it's important for the exception for the argument that you're making to prevail the plaintiffs will have to be trying to disturb the probate courts jurisdiction in some way or they would be looking for damages equal to the amount of the probate disbursements or they'd be trying to annul the will of John Griffin and then none of that is present here. The plaintiffs aren't attempting to do anything like that and I'm not seeing where Weiscarver applies if the plaintiffs are not trying to disturb the the jurisdiction or the prior rulings of the bankruptcy court, I mean of the probate court. With respect I think they are your honor in this respect the sales of the stock were specifically the Griffin Industries stock from Roselle and Griffin's estate and also the Craig protein stock and the real properties those sales were made by the executors in the course of administering the estates they were approved by the states the proceeds went into the estate and the states were finally settled. Those were inter vivis transfers. No they weren't your honor they were made after Roselle Griffin died. All of that was happening with the probate court having no idea of what was really happening with regard to the sales and the transfers in terms of how the brothers were actually behaving. Well and those were arguments they could have and should have presented to the Kentucky. What if they didn't know? Again arguments it's not a the federal courts aren't open to entertain these claims. There are arguments that could have been made to the probate court as it turned out Betsy did seek to file claims in the probate court. If I could shift to the statute of limitations because I have a very brief period here today on that the central problem with the district courts ruling is that the district court applied an actual notice standard to hold that these claims of which clearly the plaintiffs should have known of them could be brought decades after the events in question and there are three authorities that I would point this court to on this. One is the panel's decision in ham versus emergency services. It's an unpublished decision but I guess but before you get into that if where you're headed here is the should have known yeah as opposed to actual knowledge that's completely dependent upon factual findings made by the district court it seems to me you're saying that the sisters should have known because and the district court found that they shouldn't have known sort of because how would they have and so if they so isn't the question is the district court clearly in error in finding that they wouldn't have known and that they there wasn't any way that they would have known to apply a should have known standard no your honor in fact the district court found that they should have known of the very facts underlying their breach of fiduciary duty claims and that's in his motion for summary judgment ruling the document is 590 in the record the page ideas 2748 to 85 and there the court was applying a reasonable diligence standard for purposes of considering its Rico and common law claims in the court found that because they knew that Betsy Osborne had filed suit in 1990 claims against her brother before because they could have received a complaint in that case and because the complaint in that case made the same exact allegations that the sisters were bringing decades later with respect to the Griffin industry stock of course they should have known in the court also found that the wrongful conduct was concealed and that under Kentucky law that when a tort fees and a fiduciary relationship can inequitably conceals the wrongful conduct the statute limitations doesn't begin to run until the victim has actual knowledge of the wrong you're right your honor and that's that's the legal ruling that the court made about the standard and the reason why that's wrong is as the panel of this court recognizing the ham case as the Kentucky Supreme Court recognizing the Emberton case in the Adams case and as the control that the authoritative treatise on the law of trust and trade states makes clear it's a new or should have known standard now with respect to we also have this Kentucky law that says that if there's a fiduciary relationship such as between family members brothers and sisters and and that kind of thing that the family members are not required to be on alert or to exercise diligence and ferreting out or recognizing wrongdoing as they would if it was not somebody in a close family relationship you're right your honor but it's important to recognize what those cases do what they say is that when it comes to whether the concealment has to be active or passive if there's a fiduciary relationship then passive concealment counts as concealment for purposes of the statute you don't have to show that the defendants actively sought to mislead you but whether it's active or passive concealment that triggers the tolling provision the reasonable diligence standard still applies every plaintiff still has an obligation to exercise reasonable diligence that's what judge white said in her thorough opinion for the panel on the ham decision it's what the Emberton case the recent case from the Kentucky Supreme Court says and going through the authorities it's what the Adams case said and that involved a fiduciary relationship so really if you look at the authorities on this that the panel decision in ham the recent decisions of the Kentucky Supreme Court and Emberton and Adams and the the treatise that I mentioned the Bogart treatise it makes clear that no matter what is the basis for concealment a plaintiff still has an obligation to exercise reasonable diligence and once the plaintiff should have known then there's no longer any concealment that can toll that's that's on page 614 of the panel decision in ham now if this court had any doubt about what the Kentucky law is on this then we would ask you to certify this question to the Kentucky Supreme Court because either we're right that the Emberton case well long enough to get it right your honor I mean with with respect I mean there were fundamental errors in allowing this case to proceed decades later and that was substantial prejudice to my clients key witnesses including John L Griffin including Dennis Griffin including David Holt the the the husband of one of the plaintiffs who was on the board of directors died these delays is that if the plaintiffs allegations are correct then the daughters of John L Griffin has have would have been deprived of their property or their inheritance for many many years and the I think some of them have already become one or more have become deceased already I mean the longer this goes on they don't get the benefit of their inheritance your honor one of the sisters underscoring that they should have known about it one of the sisters brought suit for the very same allegations with respect to the Griffin industry stock in 1990 and the question is whether the Kentucky statute limitations would have allowed the other sisters to have waited decades to bring the very same claims if I could just make two brief remarks about yes your honor you may there's been a request from one member of the panel to give you some additional time because this is a mess and so let's set the clock for another five minutes if you would thank you very much your honor I'd like to make two quick points about the jury trial and the damages now the jury trial argument is very straightforward our clients asked for a jury trial in the our clients were entitled to a jury trial as long as they were seeking the plaintiffs argued and the district court found that they weren't seeking legal relief because all they were seeking was restitution and it's clear however that that's not what they were seeking the Supreme Court's decision in the Great West annuity case discusses the distinction between equitable rest restitution and restitution at law which is a legal form of remedy and equitable in order for there to be equitable restitution you have to show that the particular property or proceeds that was the subject of the wrongdoing from the defendants and here we know that plaintiffs were trying to do that because they sued defendants not only for damages in the amount of assets that the defendants received some of some of the stock at issue but also for sales that went to third parties including the plaintiffs own children including other brothers who aren't defendants in the case and other grandchildren so in other words that the plaintiffs aren't seeking to recover and they did not recover property actually in the process property actually in the possession of the defendants or proceeds from the sale the property that were in the possession of the defendants they're seeking to hold defendants liable for everything regardless of who received the stock and who benefited from it characterized it as an action for disgorgement well that's right but you still have to look to the nature of the relief sought and this is what the great wise the West life annuity case makes clear the Supreme Court case and I would point you to the Second Circuit's decision in the Pereira case which we cite in our brief which is squarely on point and holds that fiduciary duty claims of the same type seeking the same type of relief did trigger the jury trial right and initially the district court in this case recognize we were entitled to a jury trial that turns on whether there is a race that is being attempted to be recovered or preserved or conserved and as distinguished from damages as a result of the behavior of the defendants it is it turn on a sort of a race question I sort of your honor but I think that the parts that missing that the part that's it's property or proceeds particular property or proceeds from the wrongdoing in the defendant's possession that's an equitable action the defendants sold the stock they received a benefit of it and we want either the stock or the benefit back that's not what the plaintiffs did here because they're also seeking to recover from defendants and did actually recover from defendants for sales to third parties including sales to plaintiffs own children plaintiffs children received Griffin industry stock they're holding on to Griffin industry stock but part of the damages award requires defendants today to pay plaintiffs for the amount of the very stock that their plaintiffs that their children has it and that that not only impacts the unfairness and excessiveness of the damages award you think it would take to try a jury case here in the case well that the trial below was about two or three weeks I believe your honor and this was a fundamental fairness because if you look at that the district court obviously made funny many findings against that we recognize that but but these findings were in the basis of contested testimony including situations where the plaintiffs themselves had changed their testimony Betsy Osborne for example in her 1990 complaint swore that the brothers told them at this 1985 drawbridge meeting that they were going to sell Griffin industry stocks to the working sons it also goes to the validity of John L. Griffin's statement in his own will that the way he wanted to dispose of his property was to give the stock to the sons who are working in the company and to give a million dollars or as it turned out a million dollars to the daughters now that may look unfair today but that's only because of the sale that occurred in 2010 of the company as a result of the of the sons very hard-earned efforts in building the company into a powerhouse at the time that John L. Griffin made those sworn statements he was 72 years old and essentially the way he divided up his estate stock to the to the sons property to the daughters was a fair distribution and statements made by him was that after his stroke where this doctor claimed he had the mental capacity of an eight-year-old eight-year-old at the time was it after the stroke that he made those modifications of that it was your honor he suffered a stroke in 1983 unfortunately many older Americans but importantly your honor the district court not only did not find that he was incompetent to make that sworn statement it made clear in its post-judgment ruling that it was not making an incumbency finding and that makes sense because sure they point to some things in the record about his competency but there was other evidence in the record why are you saying that at the time that when he was 72 which by the way isn't very old but I just say that has a point of personal preference but you say at the time he did that it was 72 it was perfectly he was 72 is perfectly fair right and then things changed remarkably yes and in a situation where he was really not able to do anything about it if he had thought it was no longer fair he had passed away and I don't know he hadn't passed away yet but I understand it he couldn't even talk anymore no your honor he was able to communicate marginally but but he'd been evaluated by other doctors he was separately represented in the 1990 litigation brought by Betsy Osborne he was evaluated by that and he was determined to be competent there is another side to his company just because someone 72 and has a stroke and has difficulty communicating doesn't mean they've lost their mental faculties and he had repeatedly said and I would point you to it's in page 240 of 244 of the appendix in this case where he said he approved that sale this is how he's changing his will and he changed his will so the property would what would the sons would get the stock and the daughters would get everything else and that was a perfectly fair distribution at the time prior to that changed all the children were going to get equal shares is that right yes and there were two sons had him sign something saying that they would get almost all of it well he signed it your honor we believe he was competent to do so but that's the plaintiffs argument now if it's the case that he was competent to sign it and he as he repeatedly stated he wanted the stock to go to his sons then then there can be no breach of fiduciary duty because the sons were actually carrying out their father's wishes and granted then they see antiquated to some today to say that the working sons would get the stock weren't carrying out his father's wishes there would have been a breach of fiduciary right but but if you press him on the question of whether or not he was competent to do it and again the district court made no finding that he was not competent to do it then their case basically goes away the district court tried to get around that by saying well he didn't have the facts to ratify it well that can't be right because he made that statement after the 1990 litigation had been brought in which his daughter Betsy had made all the same allegations about the alleged breach of with respect to the stock that the plaintiffs are now making here today and if you this question sure I'm sure with the amount of money involved in this case efforts have been made to settle any chance of settlement here your honor I would love for that to happen it hasn't happened yet and you know I would I would love for an opportunity for that to happen I think you know the last point that I would make goes to the damages and if I could just make three quick points and then I promise it'll be less than a minute yes provide that opportunity well efforts have been made your honor I mean frankly positions are so hard in this point I think without action by the court it's unlikely but certainly I mean I think it's fair to say that if the court were meant for any of the errors that there would have both sides would have to take a serious look at that now now with respect to the damages let's assume that the statute of limitations doesn't apply all the liability findings and factual findings are left in place look at the damages five hundred and eighty four million dollars two hundred and seventy five million dollars of that is pre-judgment interest calculating calculated at the highest possible rate eight percent and compounded essentially giving plaintiffs a massive windfall as a result of the fact that they waited decades to bring a suit that the district court found again in the summary judgment motion they should have known of and that Betsy Osborne actually did litigate decades earlier now secondly with respect to one part of the judgment is clearly can't be right and that's the plaintiffs recovery for assets that their own children and other third parties received again part of the judgment it's more than forty million dollars allows plaintiffs to recover from defendants for the amount of stock that their own children and the other grandchildren actually received in sales that they approved now that can't possibly be right and in fact there's a Kentucky case on point the Edwards vs. Lee administrators case which makes clear that even if you are seeking engorgement you can only get disgorgement of assets the defendant himself has if you want to go after third parties you can go after third parties but of course plaintiffs don't want to sue their own children to get that money back so that has to be wrong secondly now this is a this is a technical issue but with respect to the as an S corporation that the district court allowed it to recover I try to make it as simple as possible the company when it was in existence would make distributions to the shareholders the shareholders would then take that those distributions and pay it to the IRS because that's the way an S Corp works and so they had the money only for purposes of paying it to the IRS but what the judgment in this case did was to say well that doesn't matter we're cover all of those distributions even though plaintiffs today have no obligation to pay that money as back to the IRS as the defendants initially did and so the district court refused to take into account the S Corp status at all in calculating the judgment and this in itself was a massive error that that inflated the damages award that goes to the question of damages your honor and the district court even prevented us from putting on evidence of the amount of this harm and that's clear in the district court's record where it said I'm not going to have here anything about the taxes that were paid and that's it document 783 page 32 for 89 we did breathe this is your honor I'm pretty sure that we could be here still till 3 o'clock but I think we'd better not thank you good morning and may it please the court my name is Kent wicker I represent the whole plaintiffs Linda Holt Judy Pruitt and Cindy Rader I will take nine minutes of our time and my co-counsel will take the remainder as this court I'm sure has has become aware there is an ample record in this case and there that includes a hundred and three pages of very careful factual findings by the district court including the findings that the defendants engaged in self-dealing in the assets of the estate and trust and they obstructed the plaintiffs ability to bring their claims by lying to the plaintiffs and failing to disclose to them what they were duty-bound to tell them there are a number of issues in the case I want to start with the statute of limitations issue and address the questions about the intersection of Adams the Kentucky Supreme Court case and security trust and the other cases that that talk about actual notice and talk about why actual notice is the standard when there's a Adams is a malpractice case of course and Adams does not purport to overrule security trust case the case that told us from the Kentucky High Court that when there was a fiduciary relationship between a beneficiary and a trustee or other fiduciary you don't look to whether the beneficiary knew or should have known because the beneficiary is entitled to trust the fiduciary to tell the beneficiary what she needs to know to bring her claim and Adams doesn't overrule security trust in fact it cites it as authority and it's followed by cases like Lamaster and Monday and Boone all of which follow security trust to hold that a beneficiary in a fiduciary relationship doesn't have to use any due diligence to investigate their claim and Adams comes out the same way it doesn't actually all of the skullduggery here according to your submission by members of the family as distinguished from someone else it was there were affirmative misstatements by by Dennis and by John the two remaining individual defendants in this case who affirmatively told lies to the plaintiffs and they relied on all family members yes sir yes sir but so the the basic fraud if there was fraud here was by family members one to the other that's right you're on statements misrepresentation that's right they were assisted by their by their counsel we would we would contend but that issue is not before the court what what the district court found was that the fiduciaries who were Dennis and John M had an obligation to tell the beneficiaries the facts of what they were doing that they were self-dealing in the estate to their great detriment and until the beneficiaries receive that actual notice they were under no obligation to to bring their claims were not involved in any of that was only the brother brother that's that's exactly right your honor mr. Griffin the father had a stroke in 1983 and after that point was only one able to say one word and was basically non-communicative mrs. Griffin died in 1985 and it was after she died in a 1985 when the brothers made the self-dealing transactions in the stock that had always been divided equally among the the children before mr. Griffin had a stroke and and the mother passed away are you going to address why the statute limitations didn't start to run when the sister named Bessie had the lawsuit in yes sir and and the judge made extensive factual findings about that as well because at that time the the whole plaintiffs were nominal plaintiffs in the in the suit that Betsy brought nominal plaintiffs on a derivative claim but they were never served with the complaint that the judge found that they didn't know that they were plaintiffs they were not represented they never participated in any of the court proceedings and in fact the defendants affirmatively told them misstatements lies fraudulent statements about the nature of the case about how the case was resolved with Betsy and those facts they relied on them they were entitled to rely on them because they were for their fiduciaries and they were trusting their brothers trusting their fiduciaries and that's what Kentucky law provides a beneficiary has the right to rely on what the fiduciary tells them and if the fiduciary wants to start the statute running all he has to do is tell the truth and then we don't have any issues about the lapse of time I also want to touch on there was a sort of a natural conflict of interest in a way between the brothers and the sisters right I mean the brothers did what they did out of materialism greed let us say but there was a sort of a family situation there that the sisters might have suspected that they were being not treated right because of the brothers own position in the family well the district court certainly found that the that the brothers breached this fiduciary obligation that they had to their sisters but he also made extensive findings about why they were so successful in fooling their sisters for so long close-knit family Dennis and John M Griffin were the two oldest brothers after the parents became incapacitated they kind of took over as family patriarchs that's right your honor Betsy was a sister who lived away from the other in 1990 when she did she was ostracized from the family and Dennis and John M Griffin told my clients that she was just greedy she was just mad because her children hadn't gotten stock and my clients believe them and relied on what their fiduciaries had told them about why Betsy that's not sufficient to put the other sisters on notice that they better get an accountant and lawyers and look into this very carefully that's not sufficient to at least cause them to exercise due diligence for them for their own sakes not when the fiduciaries are are telling the sisters my clients not to believe Betsy not to take any action to find out what rights they have what Kentucky law says is that you have a right to believe your fiduciary and if something comes up that causes alarm or concern and your fiduciary says oh don't worry about that and here's why she's greedy or she's wrong or she's crazy or she's not trustworthy if you're in a fiduciary relationship you're to believe your fiduciary and there is no court that requires you to go outside of that fiduciary relationship to do some kind of investigation on your own what extent during those years the Betsy Osborne suit early years to what extent were the other sisters asking any questions regarding seeing the will seeing paperwork seeing any of that kind of stuff were they doing anything like that I'll answer that in two ways your honor they weren't asking Betsy no no no I mean asking the brothers yes they asked the brothers what's this case about and the brother said well I can't tell you the details because there's a confidentiality agreement but I'll just tell you that the case is is has no merit it's just brought because Betsy's greedy and they believe them they the case was confidential so they didn't need to go to the courthouse and look things up they believe them that the case was brought for bad motives and and for frivolous motives just because their sister who was ostracized from the rest of the family had her own agenda and the Kentucky law it was because she brought the lawsuit your honor and when she was in some hard feelings back before then because you know for many people it would have put the sisters on notice well we better hire a lawyer or an accountant or somebody and see if there's anything to this well she was certainly already apart from the rest of the family because all the rest of the family lived in the northern Kentucky area and Betsy lived in st. Louis area and wasn't a close-knit part of the family and then once she brought suit she was completely ostracized and didn't talk to the whole plaintiffs for over 20 years so what the judge says I think very very cogently and it's on page four of his findings of fact is that the brothers engaged in this kind of manipulation of the sisters so that he would drive a wedge between them and prevent them prevent the whole plaintiffs from finding out what they need to know the Kentucky law doesn't put any other obligation on the beneficiaries other than asking questions to the fiduciaries and believe what they say let's we extended opposing counsel's time and we're going to extend yours a little bit as well address this question of an equitable action as opposed to a one that should have had a jury trial yes your honor and let me talk about the case the great western great american versus nuts and that the the defendants rely on here that's not a case about jury trials it was about whether a certain type of equitable remedy could have been recovered under Arisa and it didn't change the court's supreme court's jurisprudence on the test for when the seventh amendment applies you look to that the answer to that question by looking to history what was the state of affairs in 1791 at the time of the ratification of the seventh amendment would a claim like this one for this type of remedy had been brought in the law courts or been brought in the equity courts and the answer to that is very clear I think from the Sixth Circuit cases most of them relying on teamsters versus Terry the Supreme Court case where the Supreme Court looked to equity treatises like story the restatement and other authorities and and decided that a breach of trust case which is what this would have been called at the time for a remedy of disgorgement giving up the unlawful profits that the trustees made would have to have been brought in a court of equity and look at history couldn't have been brought in either and depending on whether the plaintiff was seeking damages or seeking the restoration of a race or a set of assets couldn't it have been brought in either place well what teamsters versus Terry says is that an action and I'll quote an action by a trust beneficiary against a trustee for breach of fiduciary duty and then the quote goes on to say such actions were within the exclusive jurisdiction of courts of equity so that's what the Supreme Court has said about the type this type of remedy and I disagree that the courts of equity are so limited in their ability that they're limited to a particular race that's in the possession of a particular defendant at a particular time the whole reason for courts of equity did not normally award damages did it no it didn't your honor but it had the authority to do what I mean in that what we've got here damages in the amount of 584 million dollars when you add it all up well what what Knudsen would say about this your honor and in it and it talks about this in the footnote number two of the Knudsen opinion is that what we really have is an accounting for profits the award that the judge made here the disgorgement award is calculated by an accounting of the profits that came to the defendants on account of this stock that should have gone to to the sisters in the initial stages so what the judge is just ordering them to do is to give up those profits that it meant that they made unlawfully and the equity courts had enough authority to do that as part of their attempt to do equity that their attempt to give complete and total relief and that's completely consistent with the historical practices at the time the other point I want to make about about the jury trial issue is that whether you view this as a law case or an equity case even if judge Bertelsman had in panel the jury at the beginning of the case he wouldn't have needed them at the end all of the merits issues the the issues about whether there was a breach of fiduciary duty were decided on summary judgment all of the issues about actual knowledge the actual knowledge standard is a legal issue that the judge has decided and there was no contrary testimony there was no testimony that they had actual knowledge of the self-dealing transactions here equitable defenses would have been decided by the judge no knowledge even though the sister had sued on the same basic theory I know there was a division and the brothers misled the sisters but one of the sisters did sue how could they have no knowledge that this accusation and this possibility was present they never saw the complaint they were never served with a complaint they were never told what the allegations of the complaint were in fact they were told false information about what the other there was a lawsuit they knew there was a mind to go try to find out why they did inquire your honor they inquired of the people that they trusted more than anyone in the world their brothers and that's what a fiduciary beneficiary relationship is all about and Kentucky law allows beneficiaries to trust their fiduciaries I just want to take another moment of my time to talk about the remedy if the court will indulge me just a little bit more okay there's certainly nothing inconsistent or unreasonable about the amount of the remedy it is a large amount no question about that but it is a large amount because the defendants took a large amount and they for a very long time so that's the reason that they were compelled to disgorge their profits and the disgorgement remedy includes profits that they caused to go to third parties that's a traditional part of disgorgement it's recognized in the restatement it's recognized in all the SEC cases whereas which is where we see much of disgorgement today and we brief it more in our in our in our brief thank you thank you counsel may it please the court counsel ladies and gentlemen my name is Janet Jacobowitz and I represent the Apple II Betsy Osborne and as mr. wicker noted in his argument Betsy and her sisters were lied to and misled by their brothers Dennis and John M Griffin who's also known as Griffey in connection with the handling of their father's estate and trust in 1995 now Betsy's claims are solely with respect to the 1995 her father's estate and trust and when mr. wicker mentioned the family dynamics played a tremendous role in this case these as the court found in his extensive findings listening to all of the siblings the children had been the younger children had been raised to respect and trust their older siblings and Dennis and Griffey were two of the oldest siblings they had also been raised in a family where it was very traditional where the daughters were to take care of the family and the parents and the sons were to go and do the work but at the end of the day the parents in their estate plans made sure that when the mother died it would go to her 11 children then living and when the father died he wanted it to go to his five daughters the court on page four of its findings and this is what is so telling about the facts in this case he said the record of this case reveals a pattern spanning decades of the brothers exercising their authority over their sisters by sharing information selectively leveraging their roles to discourage and sometimes intimidate the sisters from seeking information or from questioning their brothers decisions by pitting one sister against the other and by staunchly insisting that their actions were in keeping with their brothers wishes even in the face of the documents that reflected to the contrary so when you're looking at this case you have to when you review these findings by the trial court of the family dynamics that played a great role in how this played out and why the sisters and Betsy included would not have been asking questions that you would otherwise think because they were talking to their brothers and this is how they had been raised to trust those Dennis and Griffey as fiduciaries with respect to the father's estate he had a duty to disclose all of the material facts with respect to the father's will and trust and to tell the sisters and put them on notice if they breached their trust and as the court found they breached it in two ways they breached it in terms of not telling them that their father had left them these properties these assets that were to be divided amongst the daughters five ways they didn't advise them that their father even owned stock in a subsidiary called Craig protein they didn't tell the sister to Betsy that they also that they had five pieces of real estate that were very valuable to Griffin Industries and they wanted to keep control of it so even though the father said I want the property to go to my five daughters the brothers instead decided well we're going to convey it to our brothers or will create a sham corporation called Marta and we're going to keep it out of the hands of the sisters so the court said first they had they had a duty to disclose all material facts they didn't they had a duty to tell these beneficiaries that in fact they were going to to have a right to this property or they could choose cash but they were not given that right and last they had an obligation to tell about their self-dealing because the sisters were never told that in fact these properties have been conveyed to Marta this sham corporation that would keep control and lease back the properties and they had never been told about the stock going to Marty and Tommy so with the family dynamics with this type of concealment the court held that this the sisters including Betsy had been treated wrongly and taken advantage by their brothers and the fact that the sisters didn't ferret out the fraud of their brothers they didn't have the onus to do them and then they would have taken the necessary steps so the district court properly held that the claims were told until Betsy and her sisters became aware of them in 2010 there was some discussion earlier about the probate exception and I with respect to the probate exception none of the assets in the court's judgment were part of the probate court they weren't dispersed in either of the parents estates they were the unlawful profits that were made by the defendants in this case that were and that should have gone to the plaintiffs that were part what this lawsuit is about so it's really a red hearing with respect to the probate exception it's a very limited exception and the plaintiffs in this case never challenged the will they never asked for any of the race that had been part of the probate court so the probate court was found by the district court not to be applicable and that was an appropriate inconsistency the probate exception does not apply because there was no race no conflict between that theory and there should be that this is an equitable proceeding and that damages are not what is happening here but rather it's an equitable proceeding having to do with a pot to be disgorged seems like to me there's a little bit of a inconsistency between the theory of the probate exception and the equitable theory about where there should be a jury trial you follow me well your honor let me you know obviously if you were in probate court you don't in Kentucky you don't get a jury trial either so I agree right and so the question is whether the probate exception applies and that has a set of theories behind it having to do having to do with whether there is a kind of a race or a probatable estate that is being dealt with and then the end the question is one of whether there is a equitable state or race or something that you would say is purely equitable just seems to me there's a kind of a inconsistency in saying that the probate exception doesn't apply because it's damages being dealt with and however the jury trial distinction between equity and disgorgement of a race or a pot of something it just seems to me the two don't go together too well well let me see if I can try to clarify this and I hopefully will hit the points your honor but with respect to the probate exception I mean it is very narrow very narrowly drawn and it only limits the federal courts if in fact there's a challenge to the will or if there is a challenge to the race that is in the custody of the probate court and with respect to the jury trial issue your honor the the sole claim here that was left was a claim for breach of fiduciary duty which is an equitable claim under Kentucky law and federal law and in addition the only remedy that was remaining in the case at this that point in time was a claim for disgorgement but you're the plaintiffs in this case aren't attempting to clearly not attempting to go back and do anything with regard to the will nor it seems it those properties which have been disposed of one way or another nor are they after anything which remains in the custody of the probate court in the state of Kentucky you're absolutely correct your honor what they are trying to do whether timely or not is to make the case that while probate was going on they had no idea what was really going on and now that all of this is over with it has become clear in their view that there was self-dealing and fraud which had the probate court actually been aware of it things probably would have been different but that's not their action the action is to now obtain the ill-gotten profits or whatever which resulted in part from the way the estate was probated yes your honor and in fact you know disgorgement is in the nature of an accounting remedy as the cases talk about and what you're looking for obviously is what the the money the amount of money that was acquired through the wrongdoing it just leave disgorgement just leaves the wrongdoer in the position he would have occupied if there had not been a misdeed and so in this instance disgorgement it was the appropriate remedy because you know having concealed all of their fraud not allowing the probate court process to have been done conducted correctly they in turn were the beneficiaries of their fraud to the tune of hundreds of millions of dollars and so that was the hearing taking evidence determined that the plaintiffs should be awarded the disgorgement monies that the defendants and those under their control had benefited from so with that if there aren't any other questions I would just request that the court affirmed the lower court's findings thank you thank you now we really are going to hold you to your three minutes reserved thank you your honors I would like to try to address jury trial and statute of limitations on jury trial the Second Circuit's decision in the Pereira case it's 413 F 3rd 330 page 340 explains why the great white left-west case or Knutson case by the Supreme Court is directly on point with respect to the judgment you're exactly right there's a phenomenal inconsistency between the arguments in the probate exception and the jury trial in fact in arguing that the probate exception didn't apply the plaintiff said quote this case is just about money damages this is record 618 the document page ID 28089 to 90 and then the district court and finding that the probate exception didn't apply said that plaintiffs were bringing in personam claims for money damages that's record document 612 page 28040 so if there was a phenomenal inconsistency on that and also of course they're seeking money damages in personam money damages they're not seeking the equitable remedy of this of disgorgement or restitution which is we want the proceeds or property that defendants have for the wrongdoing they sued defendants for money damages in the amount of all wrongdoing regardless of who possessed the proceeds the defendants the plaintiffs grant plaintiffs own children or other parties we were entitled to a jury trial that would have been a jury trial with respect to all factual issues including with respect to the whether they should have known the claims in time the Goodman case of the Third Circuit inconsistency works both ways you'd have to say that your claim of a probate exception is not a very good claim if you're going to claim also that this is for money damages right well except for this court's decision wisecarver your honor which says that even if you're if you're seeking money damages for breach of fiduciary duty in the amount of the assets that is something within the probate exception that's why there's not an inconsistency on our part we were entitled to a jury trial and that was critically important in this factually contested case with respect to the statute of limitations they're wrong on the law I would point you to page 614 of the ham decision where the court said correctly that a defendant is not obstructed or misled on the provision of the Kentucky law if the exercise of reasonable diligence would allow him to pursue a claim and here that's clearly the case the district court's own findings document 590 page 270 480 to 85 made clear that the plaintiffs should have known Betsy brought suit the plaintiffs could the other plaintiffs could have obtained a copy of that complaint had the same exact allegations Cindy Ryder one of the plaintiffs was actually deposed in that litigation Linda Holtz husband one of the plaintiffs was actually a member of the Griffin Industry Board of Directors and therefore should have known about it there is overwhelming evidence that the plaintiffs should have known about it we could debate this in other cases but in this case one of the plaintiffs herself filed suit well they didn't contest they weren't skeptical they didn't think their two brothers were going to do them in because of this family dynamic and apparently that's what the district court factually said as well right no as to the latter but what I would say is under Kentucky laws the ham case in Emerton case makes clear plan still had to do to exercise reasonable diligence the district court found that they did not exercise reasonable diligence in failing to discover the same facts underlying the breach of fiduciary claims that underlay the Rico claims and you know that we've heard lots of arguments today about what the record discloses I would point you to pages 44 to 45 of our reply brief we talk about the conflicting evidence on this this is one of the many issues that we were entitled to put before a jury to see if laypeople could actually agree that where one of the sister filed a suit making the same exact allegations 20 years earlier the other sisters somehow should not have known about those allegations no matter what was happening that's that that is incredible we believe we're entitled to an opportunity to present that case and all the case including on damages to a jury under the Seventh Amendment and that the plaintiffs claims were barred under Kentucky law thank you for your patience thank you counsel the case will be submitted clerk may call the next case